STATE OF VERMONT

ENVIRONMENTAL COURT

| Appeal of Harrison | } | Docket No. 199-9-02 Vtec |
|---|---|---|
| | } | |
| | } | |
| | } | |
| | } | |

Decision and Order on Appellants' Motion for Summary Judgment

Appellants James and Janet Harrison appealed from a decision of the Town of Berkshire Development Review Board (DRB) denying their subdivision application. Appellants are represented by Marc B. Heath, Esq. and Eric A. Poehlmann, Esq.; the Town is represented by Robert E. Farrar, Esq.; and Interested Person Arthur Sherwood represents himself.

Appellants moved for summary judgment on whether each lot must have frontage on an existing public road. The following facts are undisputed unless otherwise noted.

Appellants own a 77-acre parcel of land in the Rural Lands zoning district. The property is located to the west (or back) of four lots (denominated Lot 1 through Lot 4) previously subdivided by and still owned by Appellants. Lots 2, 3 and 4 each have 200 feet of frontage on Route 108, an existing public road. Lot 1 has access to that public road via a 50-foot-wide right-of-way owned in fee by Appellants, which may have been approved in an earlier subdivision permit. As well as having the required frontage on Route 108, Lots 2 , 3 and 4 also have access to Route 108 from the 50-foot-wide right-of-way.

Appellants propose to subdivide the remaining 77-acre parcel into six additional building lots, numbered 5 through 10, ranging in size from ten acres to sixteen acres. They propose that these lots will have access to Route 108 by an extension of the 50-foot-wide right of way onto the 77-acre parcel. The proposed right-of-way appears to be separate from the six additional lots, as the acreage of the proposed six lots only adds up to 71 acres in area. That is, the land lying under the proposed ' right-of-way' appears to amount to about 6 acres in area and may be retained in fee or otherwise deeded separately by Appellants. Each proposed lot has at least 200 feet of frontage on the proposed right-of-way. Appellants do not state whether they intend to deed the road to a homeowners' association, or to retain ownership of it, or to deed it to the Town for a public road, or whether, in that event, the Town would accept it.

The Town's Zoning Bylaws were adopted in March of 2001. A one-page "Interim Zoning Regulation" was in effect from July 24, 2000 to the effective date of the Zoning Bylaws, but it contains no specific standards for the issuance of permits by the Selectboard. The Interim Zoning Regulation did allow Zoning Administrator approval of single- or two-family residences on lots of at least an acre, meeting certain setbacks, and with "at least 100 feet of frontage on a public highway." However, the Interim Zoning Regulation did not require that all lots to be developed

have frontage on a public road; rather, development not meeting those standards merely required prior selectboard approval.

Moreover, under the ordinary rules of statutory construction, the fact that the Interim Zoning Regulation required frontage to be on a 'public' highway, yet the later Zoning Bylaws did not specify a 'public' street, suggests that the frontage requirements of the later Zoning Bylaws allow frontage to be on either a public or a private street. That is, the change from specifically requiring public road frontage (in the Interim Zoning Regulation) to requiring the more general 'street frontage' (in the Zoning Bylaws) is presumed to have been done intentionally by the legislative body.

The Town is divided into only four zoning districts: Expanded Village district, Rural Lands district, Wellhead Protection district, and Flood Hazard Area[1] district. Most of the land in Town is located in the Rural Lands district. None of the three districts with frontage requirements makes a distinction between frontage on public roads and frontage on private roads or rights-of-way. Rather, all three districts have provisions under the heading of "street frontage" requiring 75 feet, 200 feet, or 250 feet of street frontage, respectively, for the creation of any lot or the erection of any building.

Section 430(d)(4) of the Zoning Bylaws, applicable to the Rural Lands district, provides under the heading of " Street Frontage" that "[n]o lot shall be created and/or no building shall be erected on a lot containing less than two hundred (200) feet of street frontage." The terms 'street' and 'street frontage' are not specifically defined in the Zoning Bylaws. As in most zoning regulations, the Zoning Bylaws provide that undefined terms " shall carry their customary meaning."

The Town argues that the 'intent' of the Zoning Bylaws was to require all new development to occur only on public roads, that "development has always required public road frontage in the town of Berkshire," and that even under interim zoning that had been the town's "guiding philosophy."

The parties have not pointed to any section of the Municipal Plan, adopted on May 1, 2000, to show any ' guiding philosophy' regarding whether all future development was to occur only on public roads. The section of the Municipal Plan addressing the goals, policies and objectives related to future land use in the Town states in pertinent part on page 75 that " scattered development not related to community centers and strip development along highways increases the cost of government, the congestion of roads, the loss of important agricultural lands, the over-taxing of facilities and services, economic and social decline [] in traditional local and regional centers, and the loss of aesthetic and scenic character." The policies in this section of the plan do not suggest that all new development take place on public roads. Very much to the contrary, this section contains a strong condemnation of the trend towards strip development along existing roads and highways, and promotes instead the clustering of new development, especially near the three existing population centers.

Similarly, the section of the Municipal Plan addressing the goals, policies and objectives related to the Town' s road system states in pertinent part on page 68 under the heading of " Policies" that:

2. New construction, or major reconstruction of roads and highways [should provide paths, tracks or wide enough shoulders for pedestrian and non-motorized use].

* * *

4. Roads should not be extended into important resource areas, including critical areas, well head protection areas, and important agricultural lands.

* * *

6. All future roads . . . that are to be taken over and/or maintained by the Town should be designed to standards approved by the Selectboard. . . .

[Emphasis added.]

These sections of the Municipal Plan, and especially paragraph 6, contemplate that some future roads will be constructed as private roads, and that only some of these private roads might later be taken over by the Town.

In fact, § 235 of the Zoning Bylaws, addressing Site Plan Review, carries out this policy by requiring, in subsection (e), that " [p]roposed roadways shall meet the Selectboard' s Road Standards." It is well within the Town' s authority to impose this requirement. As pointed out by the Vermont Supreme Court in Blundon v. Town of Stamford, 154 Vt. 227, 230-32 (1990), 24 V.S.A. § 4406(2) simply precludes development which does not meet its minimum standard of access by a right-of-way of at least 20 feet in width. It does not provide landowners who have a 20-foot-wide right-of-way with any entitlement to develop. Rather, it allows towns to set higher standards for access to all or to particular types of development.

On this point, the Secretary of State' s May 15, 2002 letter to DRB member Margo Sherwood characterized the DRB' s request for guidance as "whether the Town of Berkshire, through its bylaws, can require newly developed lots to have 200 feet of road frontage," that is, frontage on a public road as distinguished from a private right-of-way. The Secretary of State responded that the town was authorized by state statute " to adopt bylaws that require actual road frontage." Although the Secretary of State' s opinion on this question is not binding either on the DRB or this Court, the question in the present appeal is not whether the Town has the authority to set such a higher standard[2], but whether the Town has actually done so in its present Zoning Bylaws.

We must first look to the terms defined in the Zoning Bylaws and the structure of the Zoning Bylaws, taken as a whole.

The term ' frontage' is defined in § 520 as the dimension between the two sidelines of a lot, " measured along the property line that borders upon <u>whatever way serves as legal access</u> to the lot." (Emphasis added.) Section 300(c)(1) of the Zoning Bylaws carries out 24 V.S.A. § 4406(2) by precluding development unless it has adequate means of access either to " frontage on a maintained public road" or has access via a private road (approved by the DRB) to such a public road. Mr. Sherwood argues that this section was intended to allow private road access for lots having the required amount of public road frontage but where the land is inaccessible from the road frontage due to steepness or the presence of wetlands or similar issues; however, nothing in the language of § 300(c) makes that distinction. Rather, § 300(c)(5) seems to allow a private access road serving three or more lots, and also refers to the requirements for " frontage on, <u>or</u> access to, public roads" in the alternative. (Emphasis added.)

The term " front lot line" is defined in § 520 as any lot line separating a lot from " an <u>existing or proposed public street</u> or highway." (Emphasis added.) This definition suggests that lots may be created which border on a proposed public street, not yet dedicated as a public street when the lot was created.

The term " setback" is defined in § 520 as the nearest distance between a " <u>public or private road</u> right-of-way" and a structure. (Emphasis added.) This definition suggests that a new structure may be built on a private road as well as on a public road.

Reading all the sections of the Zoning Bylaws together, the meaning of the term " street" could not be equivalent to the term " public street," because to read it that way would make at least the definition of " front lot line" surplusage. Similarly, if the Zoning Bylaws were interpreted to require all new development to occur on existing public roads, and not on private roads, it would also make surplusage of the other sections outlined above. This would be the case even if all the dictionaries agreed that the common usage of the term ' street' was to mean ' public street;' however, the dictionary definitions also vary on this issue.

The Court must interpret the Zoning Bylaws using the rules for statutory construction, including the obligation to give effect if possible to all portions of the ordinance, and to avoid interpreting any portion as surplusage. The purpose of these rules of statutory construction is to discern the intent of the legislative body that adopted the ordinance and to give effect to that intent. Thus, even statements by legislators themselves, rendered after a statute' s enactment, about what they had intended to do in the legislation, are not considered in interpreting a statute, as compared with their statements during the process of adoption of the legislation. By the same token, although the DRB was free to interpret any ambiguous term in the ordinance, the DRB' s interpretation rendered after this application had been filed cannot be given weight in this proceeding, both because the DRB was not the legislative body that adopted the ordinance and because the statements were made well after the adoption of the ordinance and in contemplation of the present application.

Reading the Zoning Bylaws as a whole, at most they require that Appellants' lots must have at least 200 feet of frontage on either a public road or on a private road having at least a 50-foot-wide right-of-way and built to town road standards and approved by the DRB. Of course, the Town is free to amend the Zoning Bylaws in the future to implement any Town policy and to further reconcile some of the definitions and sections discussed above.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Summary Judgment is GRANTED. As the DRB did not address the merits of Appellants' subdivision application, we will hold a telephone conference to determine whether the subdivision application should be remanded to the DRB to be considered on its merits. If it is remanded, this appeal would be concluded in this Court, and any future appeal that may be brought from the DRB's action after remand would be a new appeal. However, Appellants may request the waiver of a filing fee for any such new appeal if the application remains the same as was submitted in the present appeal.

Notice of the date and time of the telephone conference will follow in a few days.

Done at Barre, Vermont, this 28th day of April, 2003.

_____
Merideth Wright
Environmental Judge

**Footnotes**

1. The Flood Hazard Area district appears to function as an overlay district, although it is not defined as such in the regulations, because it contains no area and dimensional requirements (such as minimum lot size, setback or frontage requirements).

2. See, e.g., Appeal of Richards, 13 Vt. L. Week 265 (September 20, 2002).